Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-11-00394-CV

Robert **LOWRY**, M.D. and Neurology and Neurophysiology Associates, P.A.,
Appellants

v.

Peter A. **TARBOX**, M.D.,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-20160
Honorable Larry Noll, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Karen Angelini, Justice
            Phylis J. Speedlin, Justice

Delivered and Filed:  October 26, 2011

AFFIRMED

Almost five years ago, a justice on this panel expressed concern about the gamesmanship being spawned in the area of the law involving health care liability claims and expert reports. *See Regent Care Ctr. of Laredo v. Abrego*, No. 04-06-00518-CV, 2006 WL 3613190, at *1 (Tex. App.—San Antonio Dec. 13, 2006, pet. denied) (Speedlin, J., concurring) (mem. op.).  This appeal raises the same concern.  The underlying cause involves a business dispute in which a physician sued to recover damages for breach of contract and for tortious acts that were

damaging to the physician as the minority owner of a professional association. The majority owner and the professional association moved to dismiss the lawsuit, asserting the claims alleged were health care liability claims that required the service of an expert report. We affirm the trial court's order denying the motion.

### BACKGROUND

In 1999, Dr. Peter Tarbox and Dr. Robert Lowry formed Neurology and Neurophysiology Associates, P.A. to provide neurological services to patients. NNPA signed a contract with Dr. Tarbox regarding his services. Under this contract, Dr. Tarbox was entitled to receive 33% of the money collected for services he performed. Dr. Tarbox and NNPA were also parties to a Stock Redemption Agreement requiring the redemption of Dr. Tarbox's ownership interest in NNPA when he decided to leave the practice.

In late 2008, Dr. Tarbox was not paid for his services. While investigating the reason for the non-payment, Dr. Tarbox discovered that Dr. Lowry had been moving revenues and expenses between NNPA and two other entities owned by Dr. Lowry for Dr. Lowry's sole benefit. Dr. Lowry also began taking other actions that would benefit these other entities to the potential detriment of NNPA and Dr. Tarbox. Based on his discoveries, Dr. Tarbox sued NNPA, Dr. Lowry, and the other two entities in December of 2010, asserting numerous claims including: (1) breach of contract for failing to pay him for his services; (2) breach of the Stock Redemption Agreement and a demand for an accounting to determine the redemption price he was entitled to receive; (3) shareholder oppression and breach of the fiduciary duty owed to a minority owner; (4) fraud and negligent misrepresentation for representations made by Dr. Lowry at the time NNPA was formed; (5) tortious interference by Dr. Lowry and the other two entities with the contracts between Dr. Tarbox and NNPA; and (6) civil conspiracy. NNPA and Dr. Lowry

moved to dismiss the lawsuit, asserting the claims were health care liability claims and that Dr. Tarbox failed to timely serve them with an expert report.

## DISCUSSION

The issue presented in this appeal is whether the claims in the underlying lawsuit are health care liability claims subject to the expert report requirement of Chapter 74 of the Texas Civil Practice and Remedies Code. Whether Chapter 74 applies to a claim is a matter of statutory construction which presents a question of law that we review *de novo*. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *Buchanan v. O'Donnell*, 340 S.W.3d 805, 810 (Tex. App.—San Antonio Feb. 23, 2011, no pet.).

A health care liability claim is defined in pertinent part as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West 2011). "Health care" is defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id*. at § 74.001(a)(10).

In their brief, NNPA and Dr. Lowry focus on the portion of the definition of health care liability claim that includes a cause of action for "professional or administrative services directly related to health care." They then argue that the underlying claims are "inextricably intertwined with the rendition of health care" because "the administrative details of the medical practice have an effect on the quality of care to the patients." However, in order for claims relating to professional or administrative services to meet the definition, those claims must directly relate to

treatment that was or should have been furnished for, to, or on behalf of a patient. *Id.*; *see also Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525, 527 (Tex. 2011). The underlying claims have no direct relationship to the "rendition of medical treatment" to a patient, nor do they "implicate medical or health care judgments made by professionals." *Marks*, 319 S.W.3d at 663; *Buchanan*, 340 S.W.3d at 810. Instead, the underlying claims relate to contractual and business relationships and damages resulting from alleged breaches of contracts and tortious acts within the context of those business relationships. The acts giving rise to these claims are not "an inseparable or integral part of [a] patient's care or treatment," and there is no "substantial and direct" relationship between these acts and a patient's care or treatment. *Marks*, 319 S.W.3d at 664. Moreover, expert testimony from a medical or health care professional will not be necessary in order for Dr. Tarbox to prove his claims. *Buchanan*, 340 S.W.3d at 810 (necessity of expert testimony from a medical or health care professional is important factor in determining whether a claim is a health care liability claim).

## CONCLUSION

Because the underlying claims are not health care liability claims, we affirm the trial court's order denying the motion to dismiss.

Catherine Stone, Chief Justice